The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Margaret A. Morgan. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except with the modification of Finding of Fact #14, 15 and Conclusions of Law #3 and Award #1.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On 17 July 1995, the plaintiff sustained an injury by accident to his back arising out of and in the course of his employment with the defendant.
2. On said occasion, the defendant was self-insured with TPC Administrators as servicing agent.
3. On said occasion, the plaintiff's average weekly wage was $338.00 which results in a weekly compensation rate of $225.34.
4. The plaintiff ended his employment with the defendant on 23 May 1996.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. The plaintiff, age 50, had been employed with the defendant approximately two years prior to the admittedly compensable accident. His duties involved driving a local delivery truck, delivering linens to hospitals and other establishments, and picking up soiled linen from those establishments. In doing so, he was required to push and pull buggies of linens.
2. On 17 July 1995, the plaintiff sustained an injury by accident to his back while picking up a linen buggy from the lift gate of a delivery truck. He reported his injury to Floyd Bowers, a co-owner of the defendant, who requested he see Dr. Gregorio. The plaintiff went out of work on that day. He was seen by Dr. Gregorio on two occasions.
3. The plaintiff was first seen by Scott Martin, D.C., a chiropractor, on 26 July 1995 with complaints of low back, neck pains and headaches. Dr. Martin provided the plaintiff with chiropractic treatments and referred him for an MRI on 5 September 1995. The MRI revealed a normal cervical MRI except for a mild central T4-5 disc protrusion and a normal lumbar MRI.
4. The plaintiff was examined by Dr. Michael R. Swaney, an orthopaedic surgeon, on 12 October 1995. The plaintiff reported to Dr. Swaney that he had undergone 26 treatments by Dr. Martin but that he had realized no overall improvement to his back and neck pain. Dr. Swaney diagnosed the plaintiff as having chronic soft tissue sprain of the cervical, thoracic and lumbar spine with no evidence of radiculopathy. Dr. Swaney recommended physical therapy and progressive stamina-building exercises, and advised the plaintiff to remain out of work.
5. Dr. Swaney examined the plaintiff again on 29 November 1995. He noted that the plaintiff exhibited significantly improved cervical and lumbar spine range of motion, but that the plaintiff still exhibited a degree of what appeared to be symptom exaggeration. Dr. Swaney recommended continued physical therapy and a functional capacity evaluation specifically to test both the limits of the plaintiff's work restrictions as well as his degree of cooperation and symptom exaggeration.
6. The plaintiff returned to Dr. Swaney on 19 December 1995. Dr. Swaney recommended that the plaintiff return to work at a medium level of function with lifting limited to no more than approximately ten pounds on a constant basis and 20 to 30 pounds on a frequent basis, sitting, standing and walking on a frequent to constant basis, and bending, reaching, squatting, kneeling, crawling and climbing on an occasional to frequent basis.
7. The plaintiff was evaluated for a second opinion by Dr. James J. Hoski, an orthopaedic surgeon, on 28 December 1995. Dr. Hoski found the plaintiff's physical examination to be benign, without evidence of spasm, weakness, sensory loss, reflex loss or hyperreflexia. Dr. Hoski diagnosed neck and low back pain. He found the plaintiff to be at maximum medical improvement and able to return to regular duty. However, because of deconditioning, he advised that the plaintiff should return to work with a 50-pound lifting restriction for four weeks prior to returning to regular duty. Dr. Hoski stated that the plaintiff had no permanent impairment from his 17 July 1995 injury and that there was no need for further diagnostic studies.
8. The plaintiff again returned to Dr. Swaney on 30 January 1996 with complaints of an increase in pain since he had been seen by Dr. Hoski. Dr. Swaney noted that the plaintiff's physical examination was entirely benign with no evidence of a neurologic deficit. He advised that the plaintiff had reached maximum medical improvement, and agreed with Dr. Hoski's work recommendations of a return to work with a 50-pound lifting limitation for four weeks and regular duty thereafter. Dr. Swaney assessed a three percent permanent partial impairment of the plaintiff's back.
9. The plaintiff returned to work for the defendant on 23 February 1996. His duties required him to sort and feed linens into an iron machine, which involved no lifting greater than five pounds, bending and twisting occasionally, but otherwise only standing.
10. Due to the plaintiff's continuing complaints of pain and expressed inability to drive a delivery truck, the plaintiff continued to perform the lighter duty linen handling job until 23 May 1996, although he had been released to return to regular work by both Dr. Swaney and Dr. Hoski. Furthermore, the plaintiff had returned to Dr. Swaney on 14 March 1996 and 4 April 1996, and on both occasions Dr. Swaney again found the plaintiff to have a benign physical examination and advised that the plaintiff could continue regular duty work with no restrictions. When Dr. Swaney last saw the plaintiff on 4 April 1996, he noted that no further intervention or diagnostic testing was necessary.
11. On 23 May 1996, the plaintiff informed Mr. Bowers that he was going to obtain further medical treatment. The plaintiff did not return to work for the defendant thereafter.
12. Subsequent to his last day of work for the defendant, the plaintiff returned to Dr. Martin for further chiropractic treatment. Dr. Martin recommended that the plaintiff have a diagnostic ultrasound. By letter dated 28 May 1996, the defendant's servicing agent authorized Dr. Martin to provide the plaintiff with additional chiropractic treatment in the amount of $1,500.00 but denied authorization for the ultrasound. The plaintiff continued to receive chiropractic treatment even after the defendant no longer authorized it. The plaintiff also underwent the ultrasound, which Dr. Martin testified demonstrated inflammatory activity in the cervical and lumbar spine.
13. Subsequent to the plaintiff's last day of work for the defendant, he performed work as a newspaper route salesman for approximately four months, during which he worked seven days per week for approximately 2 to 3 hours per day. This job required the plaintiff to lift numerous bundles of newspapers from a curb and place them into his car and then drive along his route to deliver them. The plaintiff has also engaged in some furnace repair work on his own and has made approximately one dozen service calls for that purpose. Furthermore, he built an additional room onto his house during 1997 and assisted in all aspects of that construction, including pouring footings, constructing a foundation, installing floor joists and subflooring, constructing walls, roof trusses and roofing, hanging doors and sheetrock, installing carpeting and painting.
14. At the recommendation of his attorney, the plaintiff participated in a chronic pain management program at Thoms Rehabilitation Hospital from 17 June 1997 through 11 September 1997. There was no evidence that the plaintiff specifically requested that the defendant or the Industrial Commission authorize such treatment. However, the plaintiff's Form 33 Request for Hearing, filed 17 March 1997, did state as an issue that the defendant would not authorize medical treatment. By filing his Form 33, the plaintiff sought approval of his treatment at Thoms Rehabilitation Hospital within a reasonable time.
15. Based upon the testimony of the witnesses and the medical evidence, the Full Commission finds that the plaintiff has been able to perform his regular work duties since February 1996. However, the Thoms Rehabilitation Hospital program assisted in the plaintiff becoming more active and able to manage his pain better mentally. Upon completion of the program, the plaintiff felt emotionally ready to return to work. Thus, the treatment was reasonably required to give the plaintiff relief. The plaintiff was released by Thoms Rehabilitation Hospital on 11 September 1997 to return to work without restrictions. He was assessed with a ten percent permanent partial impairment of his back.
16. Meanwhile, Dr. Martin continued to provide the plaintiff chiropractic treatment even though he was aware that the doctors at Thoms Rehabilitation Hospital specifically recommended against such treatment while the plaintiff was participating in the program. Further, Dr. Swaney and Dr. Hoski had recommended against further intervention. The plaintiff testified that the chiropractic treatments provided no long-term benefits, but helped him "get by" day-to-day. The additional unauthorized chiropractic treatment and the unauthorized ultrasound did not effect a cure, provide relief or lessen the plaintiff's period of alleged disability.
17. As a result of the 17 July 1995 injury by accident, the plaintiff was temporarily and totally disabled from 17 July 1995 until 11 February 1996. The defendant paid all disability compensation to which the plaintiff is entitled for such disability.
18. Because Dr. Swaney was the plaintiff's treating orthopaedic surgeon, the Full Commission gives more weight to his opinion regarding the plaintiff's permanent partial disability than to the opinions of the chiropractor or of Dr. Hoski who examined the plaintiff once. Thus, the Full Commission finds that the plaintiff sustained a three percent permanent partial disability to his back.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. As a result of his compensable injury by accident on 17 July 1995, the plaintiff was temporarily and totally disabled from 17 July 1995 through 11 February 1996 and is thus entitled to compensation at the rate of $225.34 for that period of time. N.C.G.S. § 97-29. The defendant has paid all compensation to which the plaintiff is entitled for such disability. N.C.G.S. §§ 97-29, -18.
2. As a result of his compensable injury, the plaintiff sustained a three percent permanent partial disability to his back and is thus entitled to compensation at the rate of $225.34 per week for nine weeks. N.C.G.S. § 97-31(23).
3. The plaintiff is entitled to have the defendant provide all medical compensation arising from this compensable injury that is reasonably necessary to effect a cure, provide relief or to lessen the extent of the plaintiff's disability, and is authorized by the defendant or the Industrial Commission. N.C.G.S. §§ 97-2(19), -25. Additionally, the plaintiff is entitled to have the defendant pay for his treatment and pay plaintiff total temporary disability at a rate of $225.34 per week from 17 June 1997 through 11 September 1997 at Thoms Rehabilitation Hospital. The plaintiff is not entitled to have the defendant pay for the unauthorized chiropractic treatments or diagnostic ultrasound. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendant shall pay compensation to the plaintiff at the rate of $225.34 per week for nine weeks for his permanent partial disability. Additionally, defendant shall pay plaintiff $225.34 per week while receiving treatment at Thoms Rehabilitation Hospital. This compensation has accrued and shall be paid as a lump sum subject to the attorney fee approved hereinafter.
2. The defendant shall pay all authorized medical expenses incurred as a result of the compensable injury, which specifically excludes the additional unauthorized chiropractic treatment and diagnostic ultrasound. The defendant shall also pay for the plaintiff's treatment from June through August 1997 at Thoms Rehabilitation Hospital.
3. A reasonable attorney fee in the amount of 25 percent of the disability benefits due and payable under paragraph 1 is hereby approved, and shall be deducted from said amount by the defendant and paid directly to the plaintiff's counsel.
4. The defendant shall pay the costs.
This the ___ day of December 1998.
 S/_________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/______________________ DIANNE C. SELLERS COMMISSIONER